at all, and BMO Capital Markets Corp. And Mr. Dene, I see you reserve two minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. Good morning, and please support. Defendants defrauded the government out of valuable natural resources. Congress declared the natural resources here to be, quote, a form of national wealth. Valuable natural resources on public lands are public property. Defendants scheme property fraud under the FCA. There are three claims to do so. First, Congress has already confirmed that the natural resource taken by fraud, fish in public waters, is government property. But even under defendants' theory, we still prevail, because if fish do not become property until they are caught, they are government property then under this Court's binding ruling in Vegas, followed by the 4th, 6th, 10th circuits, and multiple district courts around the country, including by, Your Honor, Judge D'Onofrio and Judge O'Dell. How did you make a claim for that? I'm sorry? How did someone make a claim for that? Under the FCA? Yeah. Under that provision, which is subparagraph D, it's a conversion claim, which does not require a submission of a claim. Under the text of the FCA, it's a conversion claim. Well, but conversion requires delivery or causes to be delivered. There's no delivery. It's the failure to deliver. No, I'll read you the statute. Any person who has possession, custody, or control of property or money used to be used by the government and knowingly delivers or causes to be delivered, the past delivers or the past parcel causes to be delivered. There's no delivery. Read the remainder of the statute. Less than all the money or property is liable to the United States government. Right, so the defendants delivered zero. So that's why it's a conversion. They wrongfully retained government property that they did not have and did not have a right to possess. Can you clarify something for me about that theory? So there's a couple of different steps, right? The first step is that this has to be government property, and you rely on Bengis. And Bengis relied on a very specific South Africa statute that essentially we interpreted as vesting title in the South African government upon the moment of an unlawful taking. Can you tell me what statutes you're relying on here to carry forward the analogy from Bengis? Yes. Ocean Throat and the Throat Circuit apply to the Virginia law, the Virginia statute, which is the same statute that we rely on inside the NRA. It's a forfeiture statute. It's a statute that says it can be subject to forfeiture. So in your view, is that the same thing as the South Africa statute? Yes, they're completely indistinguishable. That's what Ocean Throat said. That's what the district court held in Winkler, relying, Judge Bianco, on your decision to book out. So if it is property and it's under the Virginia statute, then it's Virginia state property. And I understand for purposes of the other subsection of the False Claims Act. I wouldn't say understand. I recognize the argument that you've made as to why something being state property can translate into a false claim. But under subsection D, I'm less clear as to how property that, in your view, once it's caught, is the property of the state of Virginia, is property used or to be used by the federal government. Can you help me understand how that piece of the statute fits to your theory? Yes. Just as in Bengus, this court said the government can seize and sell fish. And a plain meaning of use includes selling. So what the defendants did was prevent the government from seizing the fish and selling it. But it doesn't say it could be used by the government. It just says used or to be used by the government. Exactly. But that's what this court held in Bengus, is that the fish would be sold if it were seized. Well, Bengus was a different statute. Wasn't that a restitution statute? It was a restitution. Yes. But the question was whether there was a government property right. Right. But in terms of parsing the language of the False Claims Act and how it applies to that theory, that's not something we did in Bengus. Or am I misremembering? Bengus was not a False Claims Act case. OK. So now I'm asking you to really take this concept that this is, under the Bengus theory, this is property of the state of Virginia. And I'm asking you to parse the False Claims Act subsection that you're relying on with that concept and tell me how it being property of the state of Virginia makes it property used or to be used by the federal government. Well, a couple of points. One, there's also a federal statute, which is 1857 and 1860, which we cited earlier. So it's not just the Virginia state statute that creates a property right in the federal government. There's also a federal statute that creates a property right in the federal government. So I guess it's not an exclusive property right. They can't both have fee-simple ownership of the fish. The district court in Winkler acknowledged that both governments would have the property right under these federal statutes. But to go back to parsing the conversion section of the statute, the property is to be used by the government. The federal government. Used by the government. Either the state government or the federal government. Well, the statute puts a capital G in the government. I mean, in that subsection, tell me where you're getting a state government, where do you get the bridge from the state government to the federal government? I think the amendment to the SBA clarifies that it applies to property. Whether or not the government owns the title to the property would still apply. But that language is in the definition of a false claim, which isn't part of this subsection. Even assuming that the federal statute gives the federal government a seizure. Isn't there also a procedural problem? The district court said that it was too late, that the amendment was too late. Why did the district court abuse its discretion in saying this should have been raised earlier? It's unclear to me why it wasn't raised earlier. The decision was grounded in an error of law. It's the claim is not due. So because it was grounded in an error of law, it's abuse of discretion. The district court just said, yeah, there was an opportunity to amend earlier. It wasn't just futility. It clearly said this should have been brought earlier, right? The district court did not follow its own work on that claim. The district court said there's a motion to dismiss. It's been filed. You have an opportunity to amend it in response to the arguments made in that motion. We amended it in response to the arguments made in that motion. Then, after we amended the complaint, there were new developments. After we amended the complaint, there were new developments. And the amendment, the proposed amendment, responds to those new developments. Why couldn't you make this conversion claim? What was the new development that made this conversion claim viable that didn't exist previously? One of them was this court's decision in Miller, which interpreted the reverse false claim provision for the first time. And we were going to bring the Vengas claim under the reverse. We were going to make the Vengas argument as a reverse false claim. That was the plan. All right. Let me just ask, because you raised Miller. In connection with the reverse false claim, you don't even incite Miller in your reply. Miller clearly says that if it's discretionary whether or not a civil penalty can be imposed, that it's not an obligation. So doesn't Miller control this case on that claim? Our argument is completely consistent with Miller. Miller says if it is discretionary by statute, then the reverse false claim provision does not apply. No, in Miller, the language was shall forfeit. The language of the statute was shall forfeit. And we said in no uncertain terms that's still discretionary because an agency always has the decision whether or not to investigate and whether or not to impose the penalty. And that's certainly true here. That's not quite right, Your Honor. I think what Miller said was the statute does say shall forfeit. A different section of the statute also says that it's not really mandatory and the agency does have the discretion to not impose. You're saying the Maritime Administration has to investigate and impose a civil penalty in every single situation? That can't be true. If the argument is about general prosecutorial discretion, every circuit court to consider this question after the 2009 amendment to the FCA, which added whether or not fixed language, has agreed that the prosecutorial discretion theory does not work, including Fourth Circuit and Wheeler, which says expressly. Except we have said otherwise in Miller. We have said as long as there is prosecutorial discretion in Miller, then it's not an obligation. Isn't that what I could read you multiple quotes from Miller which say exactly that. What Miller says is if the discretion is in the statute, then that's one. But if the statute itself is mandatory and they're talking about just background prosecutorial discretion, all the other circuits who have considered the question have found that's not. All right. Let me just ask you a question about your first claim. I don't quite understand. Put aside whether or not it's dicta or not because I don't want to debate that too much. But I think you would agree that Douglas, Hughes, and Long Cove all say that states do not have ownership in wild fish. Would you agree with that? I mean, it couldn't be clearer in Douglas and in Hughes. It's called a pure fiction. And in Long Cove, we said wild fish, birds, and animals are owned by no one. Property rights are obtained by reducing them to possession. I know you argue that it's dicta. We shouldn't follow it. But don't all those cases stand for that proposition? Our primary argument is not really that it's dicta. It's that they're not interpreting the Submerged Lands Act. And the Submerged Lands Act is crystal clear. It means what it says. And the history shows that it was intended to be. There's a whole discussion of the Submerged Lands Act in Douglas. And then it says, in any event, in any event, even absent these federalism concerns that were present in Douglas, fish are owned by no one. That paragraph is not discussing the Submerged Lands Act. So that section of the opinion begins with a roadmap paragraph. And it addresses the state's final compromise. And the state was relying on two different sources of law for its conclusion that states own their fish. And therefore, state regulation trumps federal law. And the first source that the states were relying on was the Submerged Lands Act. The Submerged Lands Act gives us ownership. And therefore, we can trump federal law. And the second source of law that states were relying on was cases that predate statutes. But these cases all stand for the proposition, whether it's the Submerged Lands Act or in Long Cove, a New York statute, that no state statute can make wild fish ownership. They can't do it. They can't do it. That is not what this court said in Douglas. That's not what this court said in Long Cove. They're not interpreting the Submerged Lands Act in this discussion. So when we say in the New York, in connection with the New York statute, where the New York state said we own the fish and we said you can't own the fish, there's no such thing. But when the Submerged Land Act says that, then it's okay. It makes no sense. The property right I mentioned was a creation of the judgment of law. The legislature is always free to create a property right. And Douglas says in the paragraph about the Submerged Lands Act, this was a branch pursuant to the property clause. And the court said in the helpful, useful paragraph that's actually discussed in the section, the act, quote, does give the states title and ownership and regulatory power. Let me just ask you, this was raised in the amicus brief, but it was also raised by the parties. There's a concern that somehow if we were to conclude that fish are not property consistent with these other cases, that somehow states would be unable to regulate this type of activity. But that's not the case, right? The power to regulate can exist. They could have the same power to regulate as if they owned it, even though it's a pure fiction that they own it. But isn't oil, I mean, it seems to me the case law treats oil as different from the way it treats wild swimming fish, because oil is fixed under the surface. And the fish are swimming around. No, Your Honor. The Submerged Lands Act resolved this question. The definition of natural resources in the Submerged Lands Act includes oil, minerals, gas, fish, shrimp, crab, oysters, all of it. Under the territorial law, that's right. Yes, that's right, Your Honor. And the whole point of the Submerged Lands Act is to resolve all of these questions, including oil, including fish. Congress specifically said we're looking at these 1800s cases about state ownership of fish, including Macready and Manchester and all the cases we cite. Congress says we think these cases are rightly decided, and we're concerned that the Supreme Court has started to back away from them. We want our goal with this statute is to codify the earlier law because we're worried the judiciary is going to cut us. No, wait a minute. The goal was to return to the pre-USB California law, which was very specific as to the sort of simple ownership of the seabed for purposes of oil. All of these older cases weren't changed by USB California insofar as they talked about wild migratory animals. And so if we're going back to gear and Hermes and Holland and all of those, they make it very clear that wild birds, while the sovereign may have a sovereign right to regulate, they are not proprietors of those. Are you suggesting that all those old cases suggest that the government, whether it's the state government or the federal government, has a proprietary ownership? And if so, can you show me where the cases say that rather than specifically describe the ownership as a sovereign ownership? The Submerged Lands Act says it. No, no, but you said the Submerged Lands Act was designed to restore the law from these older cases. Yes. I never found the law in the older cases that you're saying were being restored, and I'm asking you to point me to a statement in one of the older cases that supports your view. That would be in the treaty, Manchester, Arnold, and the other cases that we cite. And Congress specifically cited individual cases, including the ones I just mentioned. And it says these cases are correctly decided, and we are concerned that the judiciaries want to stop applying those cases. And Congress predicted the future accurately because that's what the district court did. The problem I have with this is this just doesn't work well. I mean this is an application. You've made an application. You claim that the other side made an application for a license, right, and that they weren't entitled to the license because of their foreign ownership, correct? Correct? They were not entitled. Had they caught not a single fish, there'd be no claim, correct? I'm sorry? Had they caught not a single fish, would they still have violated the treaty? There'd be no quittan, correct? That's not the circumstance here. No, just answer my question. See, that's how it works. I ask you a question that I prefer that you answer my question. Yes, Your Honor. There's a lot of law on this question. As I understand the law, there's a lot of authority to the effect that it does not matter whether the government shows a lawsuit because one of the goals of the statute is to prevent fraud. But we know that the license is not property. The Supreme Court has already told us that. That's not the theory. The theory is that the fish are property. But if you caught enough – but the only thing that you lied about was you're entitled to a – do you claim that they lied about is they're entitled to a license? The legal test is whether the false statement is integral to a causal chain leading to obtaining property. Well, in all the causal chain cases that you've talked about is where you submit a fraudulent voucher into one agency that then monitors it, and then the payment comes from another. So, I mean, that's like you put your request in one slot, and the check comes out the other slot. But that's not this. This is a causal chain and more of a causal – like almost a negligence kind of an action. But where – because we misrepresented our ownership with regard to our license, ultimately we stole the government's fish. It's not a long, continuated causal chain. This is the center of the whole enterprise. It's foregone conclusion they were the same fish. And the case I would point to is the Abbott case, the Orwell case. There the defendants had a drilling lease to drill for oil on federal land, and then they also had to obtain a permit to drill, to take the oil out of the river. And in that application for a permit, they lied. And if a court said, well, this is clearly a claim to obtain property, it's the oil. Well, there's an inherent difference between a mineral right, isn't there, and the wildflora and fauna that exist and are migratory with regard to territorial waters? I mean the law – the amici brief talks about the public trust doctrine, and it's hard to dispute that there's a definite government interest in the wildlife that exists within the confines of the national boundaries and on federal land or on state land. But then the question is, is there a proprietary interest kind of like in a fee simple absolute idea? And that's where we get into problems. Your view is that it's fee simple absolute, right? My view is you just have to read the submerged land act, and you must presume that the legislature believes in the statute of what it says and says in the statute of what it means. Here, the 1311-81 says the states have title two and ownership of the natural resources in their waters, including oil, fish, shrimp, crabs, oysters. All right, we know the language. We know the language, yeah. I think it's important to come back to it, because we're not making broader arguments about common law and constitutional law. We'll come back to it in the rebuttal. Let's give it a chance. We've got 10 minutes over. All right, thanks. All right, Mr. Ellis. Good morning, Your Honor. I want to start by saying that the FCA has brought an alleged violation of the American Fisheries Act. That is a regulatory scheme that is enforced and administered by the Coast Guard and American Administration, not private parties. Those entities are fully aware of the corporate structure, the leadership, and the agreements that the defendants have in relating to their application for fishing licenses. They brought them to enforcement. So we're here under the false claims act. But the FCA, in this case, is a statute about law and protecting the government from the traditional property rights. And even accepting all of my friend's allegations as true, they cannot and have not identified any traditional property rights that the government has. Where does it say traditional property rights? It just says money or property. It does, but the court has interpreted that to speak to traditional property rights. Cassowitz is very clear on that. And Cleveland. And then, of course, we can look to cases like Cleveland and Carpenter, who interpreted similar clauses. The reason, I think, is, number one, the false claims act was enacted to protect against fraud and defense crimes. It was all about protecting the government's property and interests. And the second, as the Supreme Court described it, this is a statute that carries criminal penalties and severe civil penalties. And so it needs to be read narrowly as only to reach those traditional property interests. My friends actually, I don't think, dispute that proposition. They cited Cleveland below. They cited Carpenter below. They said they identified a traditional property interest. And I think we continue to advocate that here this morning based on the submerged land act. But the problem for my friends is that the Supreme Court has already interpreted that act. It's consistent with a long line of cases that we've already spoken about this morning. The title, the no one has title. It's a traditional property interest in wild game laws. And the submerged land act reference to title of ownership is like the references in Gear, McCready, and Manchester. A reference to a legal eviction that represents the state's power to regulate our interests in wild animals. That doesn't mean that states can't regulate the capture of wild animals. Indeed, they do. Virginia has its own licensing scheme that we comply with here. But it does mean that they lack the traditional property interests. So when you're jumping to the property interest argument as it relates to fish, you're skipping over your first argument, which is that there's never a claim asking for fish. It was a claim asking for a license. But it was a license to get fish. And I'm wondering whether you think Abbott was wrongly decided that a similar application to drill wasn't really a request for oil. No. We absolutely stand by our first argument that there hasn't been a claim for fish. The only thing that's ever been demanded of the federal government is a fishing license. And I'd love to address that. So I want to ask you then. Does that mean that a false representation in an application for a drilling permit isn't subject to the False Claims Act because you're only getting a permit? You're not getting the oil? No. So what's the distinction as to the question of whether a license is a tantamount to a request for the thing you're licensed to get? From top to bottom, the federal government's leasing program for oil is an economic enterprise. They are building out their property first in the land. So if you look at Abbott, the first step is a federal lease, at least a federal lease. That's obviously a traditional property interest. And then a part and parcel of that condition of that is in the system for the permit to drill in the oil. What Abbott says is that that permit is part and parcel of the lease itself. So part of that property – Because the oil's not going anywhere. The oil is either there or it's not there. And traditionally, there's a mineral right interest in ownership of the land above the oil. So it makes perfect sense that a mineral right – a permit to drill in – if you find the oil, then that's the property. If you don't find the oil, there's nothing there. But the fish – a fish who's swimming in the territorial waters of the United States, three miles off the coast of Virginia, who's vigorous enough to swim across the barrier and get into Virginia water, is suddenly – the title is lost and becomes the property of the state of Virginia. It's hard to kind of fit those traditional property ideas onto a migratory animal. But you're asking us to make a broader proposition, which is – just going back to Judge Robinson's question – that any time that an entity in connection with getting what's assumed there is a federal property right here or federal money, that if there's some application process, whether it be a licensing, a permit, an approval process to sort of get into the program, that if you lie in those applications, as long as you're not getting money at that point and that the money is only going to come later when you put in a voucher or some other claim, that somehow all those false statements in all those types of applications, which are pretty standard, would be not actionable under the False Claims Act. And wouldn't that be a problem? I don't think so. I mean they do cite all these cases in our cases, but the Ninth Circuit and other circuits have said, as he noted, if a false statement is integral in the causal chain, and certainly under that definition, this was integral to the causal chain of being able to fish, you had to do this, right? Yeah, so those – Those cases are wrong? No, absolutely not. They're just addressing a different concept. Those places say, if there is a claim, even if it's a multi-step process, if at the end of the day there is a request of the government, demand of the government, for money or property, that a false statement that's made earlier in that process, be it for public agency or just an earlier step, if that false statement is integral to the claim, then it can be the subject of a false claim. It's a claim for a sum of money that begins at agency X and ends up coming out at agency Y. Right, that's the daily sciences case there are. I think Maine, the University of Oklahoma City University, and the University of New York are here. I think they're both the same subject, but there's a multi-step process. But these aren't claims for fish. They're claims for the right to fish. The key is there's actually a claim in every one of those cases. At the end of the day, there is a request for property. So contrast that with Minch and Hoover, where there is a request of the government for something valuable, but there is never a claim on demand for actual property. Although it was interesting because Minch sort of reserved the question of what would have happened had there actually been a claim on the insurance and payment made from the government and whether the initial lie in the application for the insurance would have. So I wouldn't say that... I think the fact that Minch expressly left that question open doesn't suggest that it's closed, if that makes sense. No, actually what I'm trying to say is that it's not closed. The hypothetical there, if there's a false statement at one part of the process and there is subsequently a claim for money or property that that false statement enabled, there has not been a claim. And you can ask whether that previous false statement is integral to the fact that... But if the false statement is in an application for a license, let's say going back to the oil example, to drill. And I fully understand your argument and my colleague's argument that there's a difference between oil and swimming fish as it relates to their status as property. But now we're sort of stepping back and asking the prior question, which is whether the license, when it is a license that authorizes you to go grab that property, is itself property. And so you, I think, have acknowledged that it is when you're getting licensed to go grab oil, but I think what you're saying is it's not when you're licensed to go grab fish. Something that Cleveland says is that a license is not property in the hands of the government when it is an exercise of the government's regulatory authority. And I think in this situation, there's no question that what the AFA is is a regulatory scheme. The government is exercising regulatory authority when an issue is officially a license issue. After all, my friend's only plausible argument for a property right here is it's the state's property, not the federal government's. So the federal government is obviously exercising regulatory authority. In the oil thing, it's like salt mining, which is well-known in my area of the state. When one gets a permit to go down into the ground and look for salt, they're acquiring also the right to then accumulate, to take the salt if it's found. And so there is a sale of a mineral interest at the time of the issuance of the permit, right? Yes. Yes, and I think the other thing I would add to that is it's not just a permit to get oil. It is a whole scheme, right? It is from top to bottom an exercise of the government's regulatory authority. Can I ask you to take a minute to address the conversion claim? Yes. The problem with the conversion claim is the same problems are at the bottom with their reverse false. In a private property, persons are not under obligation to identify their own violation of civil or criminal law. And then report themselves to the federal government. Or be subject to a false claim in which they would have to pay not just whatever authority the law provides, but triple damages. The claim under the conversion claim would operate in the exact same way as the reverse false one. Under their view, because fish that are unlawfully harvested are subject to foreclosure, do we have an obligation to then identify that violation, come to the government, and deliver the fish, or be subject to reverse false? I realize it wasn't a false claims case, but in Megha's case, it was a similar construct, right? The government of South Africa had the authority to come see something, but for purposes of at least a restitution, the court said, no, it was already theirs by virtue of that statute. That does look an awful lot like the statutes here. Right. So let's say a couple things about Megha's. The first that I do think is important to note is that those are cases about restitution. The definition of property in a restitution statute is given a broader interpretation because it is a remedial statute. It does not come as a series about imposing criminal or civil penalties. But even accepting that there's a property claim, that the fish now is the government's property, as you pointed out, there are other obligations, other provisions, other requirements in the statute to make out a conversion claim. It must be something that at least you have confirmation of, or if not, actually deliver. And I think when you get into the context of a false claim as opposed to restitution, where there has already been a conviction, where there isn't any concerns about having to turn yourself in and prosecute a discretion, you run into the exact same problem, the conversion claim that you run into with a reverse false claim that this court rejected. All right. Thank you. Mr. DeMay, you have two minutes in rebuttal. Oh, I'm sorry. Yes, that's my fault. Ms. Teske, you have two minutes. I'm sorry, did I pronounce that correctly? It's Celeste. Celeste, okay. Good morning, Mr. DeMay. This is the court. I represent NEMO Council of Markets. And I'm just here to address if the court has any questions about our alternative arguments for affirmance. It seems now that the case has really shifted into focus on conversion. And as you mentioned, our arguments are similar there, that my client really had nothing to do with anything after the financing. The only allegations in the complaint related to its purchase and marketing and sale of notes related to the acquisition, really far removed from anything related to phishing. And so at this point, Your Honor, since there's no questions, we just ask that the court consider the affirmative grounds, if necessary, for my client. All right, thank you. Thank you. All right, Mr. DeMay, now you have two minutes in rebuttal. Thank you, Your Honor. The take versus deliver distinction is totally unsupported. They don't cite anything that supported it, and it's an arbitrary distinction. Going back to the oil example, our friend says that oil is different because there's an economic interest at stake. That's already been rejected. There's one case that has been cited by any party that is by far the closest to this fact situation. It's the Tomlinson case, which we cite in our reply. And that case specifically holds that the federal government has a property interest in wild animals on federal land, not just the regulatory. And it specifically considers and rejects the argument that because the government doesn't sell wild animals on federal property, then the federal government doesn't have a property interest. But you would agree that the licensing scheme is more in a regulatory nature as opposed to a sale of fish? The court in Tomlinson rejected the same argument because there was a licensing regime there about whether an individual could take one of these wild animals, and the defendants just didn't follow that. They committed a regulatory violation and took one. And the court said in Tomlinson, well, this is nevertheless interference with the property interest in addition to being a regulatory violation. But the purpose of the license was to regulate with regard to the taking of fish, right? It's not just that, Your Honor. I think this is very important. This is a valuable natural resource. Did the license have on it a quantity amount that was limited? Or was that established elsewhere? No, Your Honor, but it is still protecting the property rights. So it's hard to equate it as like a sale, isn't it? It's not really a sales document. It's a permission to go and capture. Correct. Correct. So it's not a sale. It's clearly not a sale of a property interest. It's a sale of an opportunity. So what is the property interest, the opportunity or its eventuation? It is the tangible item. That is the property interest that's being interviewed, the tangible item. That's what the court said in Tomlinson. The court said it's immaterial, that the government does not charge for it because it decides to do that at any time. So it's only when you catch the fish that the ketone ripens. In that scenario, then I guess it applies squarely, Your Honor. So clearly the license is not a sale of a fish. It's just the opportunity to fish. It is a grant. It's a provisional permission to take fish. Sounds like a regulatory thing. It is regulatory. It is also a grant of a property interest. Back to Vegas, this is not a situation where I am imposing a duty to self-report. The defendants affirmatively each year made false statements to cover up their previous illegal fishing. They took it upon themselves to speak on that subject, and when they did that, they lied. They covered up their previous illegal fishing. So this is just like Vegas. And Vegas is binding. It's been applied all across the country and other circuits. And the district court just got it wrong. The district court said Vegas was just about a regulatory interest. And that's not a defensible reading of Vegas. The court says this is a property interest that goes beyond a mere regulatory interest. All right. Thank you. Thank you, Mr. DeMay. Thank you to everyone. We'll reserve the decision. Have a good day.